[Cite as *Israfil v. Warren Correctional Inst.*, 2011-Ohio-3440.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MUMIN ISRAFIL

    Plaintiff

    v.

WARREN CORRECTIONAL INSTITUTION

    Defendant

    Case No. 2010-05056-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1} Plaintiff, Mumin Israfil, an inmate incarcerated at defendant, Warren Correctional Institution (WCI), filed this action alleging he suffered personal injury as a proximate cause of negligence on the part of WCI staff when he was escorted from a segregation unit to a court hearing held at WCI premises on March 9, 2010. Plaintiff related excessive force was used by WCI personnel in escorting him from a WCI segregation unit to a hearing room and back to segregation thereby aggravating "preexisting injuries causing serious physical harm of acute pain and substantial suffering in plaintiff's back, neck, shoulder, legs, anus, groin." Plaintiff requested damages in the amount of $2,500.00, representing claims for pain and suffering and "diminished mental capacities" allegedly caused by the acts of WCI staff in escorting him from one area of WCI to another. Plaintiff was not required to pay a filing fee to prosecute this action.

{¶ 2} Defendant denied any liability in this matter and specifically denied WCI staff used excessive force on plaintiff when escorting him to and from a hearing held on WCI premises. Defendant explained plaintiff's injury claim "on March 9, 2010 is based solely on fact that WCI would not provide Plaintiff with a wheelchair to travel to and from

the hearing" held at WCI. Defendant acknowledged "there was no unnecessary force used" by WCI personnel when plaintiff was escorted to and from the March 9, 2010 hearing due to the fact he refused a direct order to walk from his housing unit to the hearing site and back again. Defendant maintained the physical actions used by WCI staff on plaintiff "to gain compliance for an inmate (plaintiff) refusing a direct order to walk when no medical evidence exists proving that he cannot." Defendant advised plaintiff has claimed he cannot "walk or stand and has repeatedly requested a wheelchair and shower chair." Defendant further advised WCI medical personnel "were unable to find any medical evidence to support (plaintiff's) claims of pain and loss of function (and) [a]n independent medical exam by an Ohio State University Medical Center Neurosurgeon (reported submitted) found no basis for Plaintiff's complaint without further testing." Defendant argued plaintiff has not offered any evidence to establish excessive force if any was used against him on March 9, 2010 or that any physical actions used aggravated any preexisting injuries.

{¶ 3} Defendant provided a copy of a referral letter from The Ohio State University Medical Center Clinical Professor, Carole A. Miller, M.D., who referenced an examination she conducted on plaintiff on July 29, 2010. Dr. Miller noted past "radiologic testing" done on plaintiff "does indicate moderate cervical spondylosis." Additionally, Dr. Miller noted plaintiff has "underlying cervical and lumbar degenerative disc disease," which apparently was confirmed by scans done on April 22, 2009 and June 9, 2009. Plaintiff has not undergone any radiologic scan after the March 9, 2010 incident forming the basis of this claim. Dr. Miller wrote plaintiff's disc disease "can lead to and cause chronic pain."

{¶ 4} Defendant also provided a copy of a "Summary of Clinical Interactions" from defendant's Medical Director, John R. DesMarais, chronicling plaintiff's medical history while under incarceration. Dr. DesMarais recorded the initial report of plaintiff having any back problem was in November 2007 when he fell out of his bunk "claimed he hit his head and low back and was diagnosed as a lumber strain;" although an earlier indication was during 2005 when he complained of neck pain, "it was presumed that he may have an early possible disc problem." According to Dr. DesMarais, no significant medical problem was presented by plaintiff until August 6, 2008 when "he was struck on the right calf and thigh by a motorized trash golf cart traveling at a low rate of speed"

and complained of pain in his lower right leg, back, and neck. Dr. DesMarais characterized the August 6, 2008 incident as "a sentinel event." Dr. DesMarais reported plaintiff received medication for his pain complaints, was examined, and "underwent a full investigation including cervical spine, low-back x-rays, right knee x-rays on (August 7, 2008), all of which were negative." In his summary, Dr. DesMarais advised "[f]rom August 11, 2008 to the present (plaintiff) has been seen twenty times for repeated evaluations of complaints of back pain, right-side numbness, increase in back and neck discomfort, and spasms in his neck and lower back; and has frequently complained that he was been unable to walk."

{¶ 5} The following information and opinion provided by Dr. DesMarais regarding plaintiff's condition in relationship to testing conducted is included in its entirety:

{¶ 6} "CT of the lumbar spine performed by OSU on May 21, 2009, ordered by the institutional physician for complaints of pain out of proportion to exam to make sure she wasn't missing anything, showed only mild disc bulges of L3 and L4, L4 and L5 which should not cause any significant symptoms and do not cause ambulatory impairment. Of note there was no significant narrowing of the spinal canal noted in his low back which if present could have been responsible for his symptoms.

{¶ 7} "He has also undergone an MRI of his neck on April 22nd 2009 which was ordered also by the institutional physician to ensure that there (are) no significant issue in his neck causing the alleged weakness in his legs. The MRI did show relatively severe disk disease in his neck at the level of cervical vertebrae 5 & 6 on both sides. However, he does not complain of symptoms referable to the upper extremity, any tingling or numbness or weakness of his arms, which this type of lesion would cause. Most importantly however he does not have any evidence of narrowing of the spinal column in the neck (which also might have caused his symptoms if it were present). Additionally, he has had x-rays of his thoracic spine, his chest, his right knee, his lumbar sacral spine, and his cervical spine, all of which either negative, showed mild scoliosis (clinically insignificant in his age group) or mild degenerative disc disease (also, again a common finding seen on nearly everyone after age 35 and clinically insignificant in his case.)"

{¶ 8} Based on his evaluations, Dr. DesMarais expressed the following written

opinion:

{¶ 9} "In summary, Mr. Israfil has received an extraordinary amount of care, had significant and full investigations and consultations for his complaints which have yielded only insignificant to minor degrees of pathology, none of which explain his alleged symptoms. He continues to intermittently walk yet continues to insist that he can't and we can find no medical basis necessitating the use of a wheelchair."

{¶ 10} Plaintiff filed a response insisting that the physical actions used upon him by WCI staff on March 9, 2010 constituted excessive force and the actions utilized "did cause (him) to suffer serious physical injury." Plaintiff maintained he informed defendant's personnel prior to the date of his hearing of "his inability to walk distance to court room, and requested wheelchair aid," which was denied. Plaintiff acknowledged he was given a direct order to walk from his housing unit to the hearing site room on March 9, 2010. Plaintiff related he walked approximately "10 ft outside from the segregation building unable to continue in (debilitating) pain" and informed WCI staff "he could walk no further." According to plaintiff in response to this information, WCI staff then used force to escort him to the hearing site by "holding plaintiff up by his pants waistband and arm pits." Plaintiff advised that due to the methods employed by defendant's personnel his "weight was distributed to his crotch and anus . . . causing him serious physical harm, while being taken to the courtroom." Plaintiff further advised that when the March 9, 2010 hearing concluded he was "dragged by his arm pits back to his cell in segregation, causing him injury and harm to preexisting injuries."

{¶ 11} Plaintiff attached a copy of an "Informal Complaint Resolution" (ICR) he submitted on March 11, 2010 in connection with the acts of WCI personnel in escorting him from his housing unit to the hearing site and back again on March 9, 2010. In this ICR, plaintiff wrote "I was semi-carried to a trial in the training room (and) [a]fter trial I was again semi-carried back to my cell." Defendant's employee, in responding to this ICR wrote the definition of force under internal regulations[1] constitutes "the exertion or application of a physical compulsion or constraint." Also contained in the ICR response was the conclusion "[y]ou (plaintiff) being assisted to help keep your balance and keep you from falling is not force." In his ICR plaintiff maintained the actions used by WCI

---

[1] Ohio Adm. Code 5120-9-01(B)(1) defines force. This Ohio Administrative Code section states:
"(1) 'Force' means the exertion or application of a physical compulsion or constraint."

staff in physically escorting him on March 9, 2010 constituted a use of force under internal regulations as well as an "unreported use of force incident" under internal regulations. The court concludes the physical actions of defendant in escorting plaintiff to the hearing site and back again did indeed involve "force" as defined by Ohio Adm. Code 5120-9-01(B)(1). However, the court finds the force used on plaintiff after considering all evidence available did not rise to the level of a "reportable use of force" as addressed in Ohio Adm. Code 5120-9-01(B)(1)(b).[2] Additionally, the court concludes the force used on plaintiff on March 9, 2010 in connection with his attending a hearing at WCI did not involve "excessive force" as defined by Ohio Adm. Code. 5120-9-1(B)(3).[3]

{¶ 12} Plaintiff contended defendant's acts in physically escorting him to and from a hearing on March 9, 2010 aggravated his existing chronic medical conditions causing him great physical pain. Plaintiff further contended the force used upon him by WCI personnel amounted to actionable negligence. Plaintiff argued defendant breached a duty of care owed to him to protect him from the unreasonable risk of harm and the breach of this duty resulted "in the injury, loss and damage described in (his) complaint."

{¶ 13} In order for plaintiff to prevail upon his claim of negligence, he must prove, by a preponderance of the evidence, that defendant owed him a duty, that it breached that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573,¶8 citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 472 N.E. 2d 707. Additionally, Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care and well-being. *Clements v. Heston* (1985), 20 Ohio App. 3d 132, 136, 20 OBR 166, 485 N.E. 2d 287. In the instant claim, plaintiff has failed to prove, by a preponderance of the evidence, that the acts of WCI personnel on March 9, 2010 constituted actionable negligence or that such acts resulted in any aggravation of an existing medical condition or caused any additional pain than he ordinarily claims to

---

[2] Ohio Adm. Code 5120-9-01(B)(1)(b) provides:

"(b) The use of one's hands with minimal force such as may be necessary or incidental to the application of restraints, or to restrain, guide, support, or direct, etc., an inmate during procedures such as the transport, escort or movement of an inmate shall not in itself be considered a reportable use of force."

[3] Ohio Adm. Code 5120-9-1(B)(3) states:

"(3) 'Excessive force' means an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which reasonably appears to be

suffer from.

{¶ 14} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548. The court finds plaintiff's allegations not credible in regard to exacerbation of existing physical ailments and increased pain. Dr. Miller noted in the submitted referral letter plaintiff "weighs approximately 60 kg (132 1/4 lbs) and was approximately 172 cm (5'7 3/4") tall." Considering plaintiff's height and weight, the trier of fact is not convinced the described acts of WCI personnel in physically escorting plaintiff to and from a court hearing could have caused the damages claimed. The existing evidence does not support any converse finding. Plaintiff's claim is denied.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MUMIN ISRAFIL

    Plaintiff

    v.

WARREN CORRECTIONAL INSTITUTION

    Defendant

---

necessary under all the circumstances surrounding the incident."

Case No. 2010-05056-AD

Deputy Clerk Daniel R. Borchert

ENTRY OF ADMINISTRATIVE DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Mumin Israfil, #289-920
P.O. Box 120
Lebanon, Ohio 45036

Gregory C. Trout, Chief Counsel
Department of Rehabilitation
and Correction
770 West Broad Street
Columbus, Ohio 43222

RDK/laa
3/11
Filed 3/31/11
Sent to S.C. reporter 6/30/11